**No. 23-10184**

**IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

---

**JOHNNIE DAVIS,**
**Petitioner/Appellant,**

**v.**

**UNITED STATES OF AMERICA.,**
**Respondent/Appellee.**

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA**
**2:21-cr-101-MHT-JTA-1**

---

# REPLY BRIEF OF THE APPELLANT JOHNNIE DAVIS

**J.D. Lloyd**
**The Law Office of J.D. Lloyd, LLC**
**2320 Arlington Ave. S.**
**Birmingham, AL 35205**
**O. 205-538-3340**
**JDLloyd@JDLloydLaw.com**

**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff-Appellee,** | ) | **Appeal No. 23-10184** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JOHNNIE DAVIS,** | ) | |
| **Defendant, Appellant.** | ) | |

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

The appellant, Johnnie Davis, through undersigned counsel, pursuant to Fed. R. App. P. 26.1, 11th Cir. R. 26.1-1, and 11th Cir. R. 26.1-2(a) certifies that the following persons may have an interest in the outcome of this case:

1. Adams, The Honorable Jerusha T., United States Magistrate Judge for the Middle District of Alabama;

2. Counts, Eric M., Assistant United States Attorney, Middle District of Alabama, counsel for the United States in the district court;

3. Davis, Johnnie, Defendant/Appellant;

4. Davidson, Kevin P., Assistant United States Attorney, Middle District of Alabama;

5. Duffey, Jeffrey Clyde, counsel for Defendant/Appellant Davis;
6. Geer, III, John Joseph, Assistant United States Attorney, Middle District of Alabama, counsel for the United States in the district court;
7. Griffin, Jr., Gregory Oswold, Assistant United States Attorney, Middle District of Alabama, counsel for the United States in the district court;
8. Jones, Justin Louis, Assistant United States Attorney, Middle District of Alabama, counsel for the United States in the district court;
9. Keith, Richard K., Montgomery, Alabama, former CJA appointed counsel for Defendant/Appellant Davis in the district court;
10. Lloyd, John Douglas (J.D.), appellate counsel for Defendant/Appellant Davis;
11. Stewart, Sandra J., United States Attorney for the Middle District of Alabama;
12. Talley, Brett J., Assistant United States Attorney, Middle District of Alabama, counsel for the United States in the district court;
13. The United States of America, Plaintiff/Appellee; and

14. Thompson, The Honorable Myron H., United States District Judge, Middle District of Alabama.

/s J.D. Lloyd
J.D. Lloyd

*Counsel for Petitioner*

## TABLE OF CONTENTS

Certificate of Interested Persons ............................................................i

Table of Citations ..........................................................................iv

Summary of the Argument ..................................................................1

Argument......................................................................................2

I. The district court erred in denying Davis's motion to suppress evidence that revealed his location through use of an improperly altered Google geofence warrant..........................................2

A. Davis has a reasonable privacy interest in his location and movement even if his close personal associations revealed information that crossed into the public sphere......................2

B. The geofence warrant failed to meet Fourth Amendment requirements due to likelihood of extrajudicial alteration......7

C. Good Faith doesn't apply.................................................9

II. Federal and state law enforcement improperly collaborated to deny Mr. Davis' his federal right to presentment.....................9

III. Even if the jury had ample evidence that Mr. Davis used a gun to intimidate victims of the carjackings, the totality of the evidence presented does not support a conclusion that Mr. Davis actually intended to seriously harm or kill any of his victims....11

Conclusion ....................................................................................13

Certificate of Compliance...................................................................14

Certificate of Service .......................................................................14

## TABLE OF CITATIONS

### CASES

*Barnett v. United States*, 384 F.2d 848 (5th Cir. 1967) ............................ 9

*Carpenter v. United States*, 138 S. Ct. 2206 (2018) ...................... 3, 5, 6, 7

*Cosby v. Jones*, 682 F.2d 1373 (11th Cir. 1982) ...................................... 12

*Groh v. Ramirez*, 540 U.S. 551 (2004) .................................................. 7, 8

*Katz v. United States*, 389 U.S. 347 (1967) ............................................... 3

*Kyllo v. United States*, 533 U.S. 27 (2001) ................................................ 5

*United States v. Jones*, 565 U.S. 400 (2012) ............................................. 5

*United States v. Knotts*, 460 U.S. 276 (1983) ......................................... 3, 4

*United States v. Tedford*, 875 F.2d 446 (5th Cir. 1989) .......................... 10

### Rules

Rule 41, Fed. R. Crim. P. ........................................................................ 10

## SUMMARY OF THE ARGUMENT

Mr. Davis is entitled to a new trial on account of the various constitutional violations he suffered or is entitled to the rendering of his convictions due to the United States' failure to present a prima facie case of carjacking. Mr. Davis had a reasonable expectation of privacy sufficient to justify standing to challenge the geofence warrant, which was impermissibly altered and not worth of good-faith deference. His presentment rights were violated as this investigation and case were truly federal pursuits, not a dual-track State-Federal operation. These errors justify a new trial. Finally, a reasonable jury would have concluded that Mr. Davis didn't have the intent to seriously harm or kill anyone because the testimony and recordings presented at trial clearly demonstrated Davis lacked that intent. Accordingly, the convictions should be rendered.

## ARGUMENT

### I. The district court erred in denying Davis's motion to suppress evidence that revealed his location through use of an improperly altered Google geofence warrant.

Davis had a reasonable expectation of privacy in his location and movements, which was not defeated by disclosure of location data that partially captured public spaces. Nor is Davis foreclosed from challenging the geofence warrant at issue because law enforcement ended up connecting Davis to account information pointing to Portia Gilbert. This is so because society expects that location monitoring through Google subscriber information remain private from law enforcement intrusion. And this reasonable privacy expectation doesn't just apply to Mr. Davis' Google account. Instead, it extends to the account information associated with Portia Gilbert as this information revealed Mr. Davis' location and movement. Thus, Mr. Davis' challenge to the warrant alteration warrants consideration. It also warrants reversal due to extrajudicial alteration and inapplicability of the good faith doctrine.

#### A. Davis has a reasonable privacy interest in his location and movement even if his close personal associations revealed information that crossed into the public sphere.

The basic tenant of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by

government officials." *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) (quoted citation omitted). And these protections do not turn on whether the areas searched are in the public sphere. *See Katz v. United States*, 389 U.S. 347, 351 (1967). Thus, while the search parameters here include public thoroughfares, this alone cannot defeat Mr. Davis expectation of privacy in his location and movement.

First, the six locations that formed the basis of the geofence warrant at issue were not restricted to only public areas. Instead, as Agent Nathan Faggert conceded, the search parameters included every area within the provided coordinates to include businesses and homes. Doc. 120 at 23-24. In fact, Faggert couldn't even say whether Google's execution of the search parameters would disclose devices or Google subscribers outside the areas designated in the geofence warrant. Doc. 120 at 23. This type of sweeping search is a far cry from the beeper police used in *United States v. Knotts*, 460 U.S. 276, 278-79 (1983), to track a single drum of chemicals as it travelled by vehicle along the road.

In *Knotts*, law enforcement obtained permission to place a tracking device on a drum containing chloroform that the chemical company then sold to the defendant, who police suspected of being manufacturing

drugs. *Id.* at 278. Police used this beeper and visual surveillance to follow the chemicals to a rural cabin. *Id.* Tracking stopped once the beeper registered as within a home. *Id.* at 278-79. In upholding the use of this limited type of tracking device, the Court observed: "The governmental surveillance conducted by means of the beeper in this case amounted principally to the following of an automobile on public streets and highways." *Id.* at 281. Thus, *Knotts* turned on a lack of privacy in movement when a person travels by vehicle on public roads. *Id.* at 281-82.

Here, the geofence search parameters did not restrict disclosure of location and movement to public roads. Nor do we have a situation like *Knotts* that involved visual surveillance in public areas and limited tracking of a single vehicle. The lessened privacy interest in a vehicle is not implicated at all. Instead, the geofence warrant here focused on personal devices and searched for an unlimited number of users identified in geographic areas that reached far beyond public roads. Doc. 120 at 12, 20-24. Businesses, homes, and motels. All included within the sweeping

search parameters. *Id.* That the search parameters also included public roads does not equate the geofence search to the beeper in *Knotts*.[1]

Plus, due to the sweeping nature of the geofence warrant at issue here, limitation to twenty-minute periods does not defeat Mr. Davis' reasonable expectation of privacy in his location and movement. As the United States Supreme Court has recognized, the ubiquitous nature of cell phones usage requires careful consideration because of the breadth of information our cell phones contain: "[a]s technology has enhanced the Government's capacity to encroach upon areas normally guarded from inquisitive eyes, this Court has sought to 'assure preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted.'" *Carpenter*, 138 S. Ct. at 2214 (quoting *Kyllo v. United States*, 533 U.S. 27, 34 (2001)) (cleaned up). Regarding cell phone tracking or data in particular, "when the Government tracks the location

[1] As *United States v. Jones*, 565 U.S. 400, 409 n.6 (2012), observed of *Knotts*: "the 'limited use which the government made of the signals from this particular beeper,' 460 U.S., at 284, 103 S.Ct. 1081, and reserved the question whether 'different constitutional principles may be applicable' to "dragnet-type law enforcement practices' of the type that GPS tracking made possible here, *ibid.*"

of a cell phone it achieves near perfect surveillance, as if it had attached an ankle monitor to the phone's user." *Id.* at 2218.

While *Carpenter* involved historical cell-site location data over a longer period than the search parameters of this case, the search employed here was not so limited to defeat Mr. Davis' reasonable expectation of privacy. This is due, in part, to the multi-step process outlined by the geofence warrant attachments. Doc. 120 at 25-29. At that first step, law enforcement received anonymized listings of every account holder within the search parameters. *Id.* at 25-26. But the warrant also allowed law enforcement to use the data returned plus request additional information from Google, even outside the originally listed parameters, without any additional judicial oversight. *Id.* at 28-29. Thus, the breath of the geofence warrant is not diminished by the periods of time contained in the search parameters.

Finally, while *Carpenter* did not involve geofence warrants, it did similarly involve the tracking of location and movement through the cell phone devices that nearly every single one of us carry. 138 S. Ct. at 2217 (addressing the unique nature of cell phone location records). Contrary to the United States' position, *Carpenter* is not so narrow to have

application in this case involving tracking of cell phone and related devices through Google subscriber information. In fact, the focus in *Carpenter* on the unique nature of cell phones and their constate usage, whether by an individual or by those who we closely associate with, makes *Carpenter* uniquely applicable to Mr. Davis' position here that he had a reasonable expectation of privacy in his location and movement as tracked through his close associate's device and account subscription. *Carpenter*, 1385 S. Ct. at 2214-15.

### B. The geofence warrant failed to meet Fourth Amendment requirements due to likelihood of extrajudicial alteration.

Mr. Davis does not rely on speculation to overcome the district court's factual findings on the issue of whether Agent Faggert impermissibly altered the geofence warrant at issue outside the lower court's presence. He instead relies on a reasonable reading of the record that demonstrates that the warrant application was changed after the judge signed it to incorporate Attachment E. Without incorporation of Attachment E the warrant failed to meet the particularity requirements of the Fourth Amendment. *See Groh v. Ramirez*, 540 U.S. 551, 557 (2004) (outlining the warrant requirement).

Here, Faggart's testimony that he typically would only make changes to a warrant before the judge does not defeat Mr. Davis' position that the record demonstrates otherwise here. *See* Doc. 135 at 6, 25-29, 31-32. At the outset, Faggert could not explain when the alternation from Attachment B to Attachment E occurred. Doc. 135 at 7. And he could not say what he had done in this case. *Id.* Key here to Mr. Davis' position is that Faggart explained that he would immediately take the signed warrant and supporting documents to file in the clerk's office. *Id.* at 30. But here, the warrant filed with the clerk's office that Defense counsel submitted as Defense Exhibit 4 referenced just Attachments A and B. *Id.* at 29. If Faggart followed his typical procedure by presenting all documents to the judge, only altering them in the judge's presence, and then immediately filing those documents, then why isn't the amendment to incorporate Attachment E on the filed documents? It's because the amendment occurred after the court reviewed the documents and the warrant was filed.

Without judicial approval of the amendment to incorporate Attachment E, the geofence warrant cannot meet the particularity requirement as set forth in *Groh*, 540 U.S. at 557.

### C. Good Faith doesn't apply.

The good faith exception cannot apply to the constitutional deficiencies at issue in Mr. Davis' case. This is due to the wide-reaching scope of the geofence warrant and the delegation of supervisory responsibility to law enforcement. As these points are well-supported in Mr. Davis' opening brief, he does not repeat them here.

## II. Federal and state law enforcement improperly collaborated to deny Mr. Davis' his federal right to presentment.

The United States contends that Mr. Davis' presentment issue is "straightforward" because the investigation into Mr. Davis and his purported crimes was "routine." *Brief of the Appellee*, *33. The investigation was a routine federally-focused investigation headed towards federal prosecution and should have been treated as such. While State authorities played a role, the investigation necessarily relied on federal resources and focused on federal investigative mechanisms with the goal of a federal prosecution. The collaboration that took place between state and federal authorities was improper.

In assessing whether improper collaboration took place, this Court in *Barnett v. United States*, 384 F.2d 848 (5th Cir. 1967) held that investigators' purpose "must be determined objectively from all surrounding

circumstances." 384 F.2d 848, 858. Mr. Davis explained in his opening brief how the circumstances surrounding this investigation pointed to the conclusion that Mr. Davis would one day end up in federal court on federal charges for Hobbs Act robbery and carjacking. Investigative documents referenced federal charges that could be brought pursuant to this investigation. *See* Doc. 110-1 and 110-3. Federal courts were used to get much of the evidence used at trial and in the investigation. *See* Doc. 113 at 18-27; Doc. 224 at 158. Even the lead agent's own words during Mr. Davis' interrogation revealed the true nature of law enforcement's efforts (federal charges) when he told Mr. Davis that "[t]he federal government recognizes acceptance of responsibility," clearly referencing a federal sentencing consideration. Doc. 224 (admitting United States' Exhibit 19 – Davis' interrogation and statement). Again, a true dual-track prosecution wasn't unfolding. The surrounding circumstances demonstrate this matter was heading to federal court and that federal rights should have been protected. *See also United States v. Tedford*, 875 F.2d 446 (5th Cir. 1989) (recognizing that federal involvements with a search on a state warrant made the search a "federal search" subject to the constraints of Rule 41, Fed. R. Crim. P.)

The State and federal authorities here cooperated in a way that denied Mr. Davis his federal rights to presentment. The circuit court erred in failing to recognize this improper cooperation. Accordingly, Mr. Davis' statements are due to be suppressed.

### III. Even if the jury had ample evidence that Mr. Davis used a gun to intimidate victims of the carjackings, the totality of the evidence presented does not support a conclusion that Mr. Davis actually intended to seriously harm or kill any of his victims.

With respect to this sufficiency of the evidence claim, the United States again contends that Mr. Davis' case is a routine case – that this is nothing more than a routine example of a carjacking offense. But the evidence presented does not support that conclusion. The jury had ample evidence that Mr. Davis lacked the requisite intent to seriously harm or kill a victim, and, as such, judgments of acquittal should have been granted.

A rational jury would have received this evidence and acquitted Mr. Davis on the grounds that the United States failed to prove Mr. Davis has the actual and real intent to seriously harm or kill anybody. This jury heard about several carjackings and robberies. But nobody was hurt, let alone killed, in any of the carjackings or robberies taking place on three

different nights. For two of the carjacking victims (Rivas and Rollins), there was a question as to whether their carjacker pointed a gun at anyone since they did not initially tell police that a gun was pointed at anyone. Doc. 224 at 35, 71. Thomas admitted that her carjacker never pointed a gun at her and only motioned towards the gun in his waist. *Id.* at 90. Again, through all the carjackings and robberies the jury heard about and saw on video, no one was harmed.

The question of whether Mr. Davis had the requisite intent to seriously injure or kill anyone was readily apparent from the ample evidence of his actions: he lacked the intent hurt or kill anyone. Only by rejecting crystal-clear testimony and video recordings and using "conjecture and speculation," *see Cosby v. Jones*, 682 F.2d 1373, 1383 n. 21 (11th Cir. 1982), could the jury find that Mr. Davis intended to seriously harm or kill anyone. Accordingly, the United States failed to present sufficient evidence as to this element. This Court must thus reverse and render these convictions.

## CONCLUSION

Based on the foregoing, this Court should render Davis' convictions or reverse the matter for a new trial.

Respectfully submitted November 17, 2023.

/s J.D. Lloyd
J.D. Lloyd
The Law Office of J.D. Lloyd, LLC
2320 Arlington Ave. S.
Birmingham, AL 35205
O. 205-538-3340
JDLloyd@JDLloydLaw.com

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

I certify that this brief contains 2,366 words and thus complies with the type-volume limitations of 11th Cir. Rule 22-2 and Rule 32(a)(7)(B)(i), Fed. R. App. P. This brief is written in 14-point Century Schoolbook.

/s J.D. Lloyd
J.D. Lloyd

*Counsel for Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2023, the foregoing Certificate of Interested Persons was filed electronically using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

/s J.D. Lloyd
J.D. Lloyd

*Counsel for Petitioner*